ACKERMAN v. ADVANCE PETROLEUM TRANSPORT, INC.

1. APPEAL AND ERROR—SUPREME COURT—JURY—SYMPATHY.
    Supreme Court has duty to judge action at law by established
    rules of law although case be one in which it is readily seen
    how sympathy might have affected verdict of most jurors if
    case were submitted to them.

2. AUTOMOBILES—TANK TRUCK—CHILDREN—NEGLIGENCE—QUESTION
    FOR JURY.
    In action for death of eight-year-old boy who fell or was thrown
    under wheel of defendant's tank truck trailer at street inter-
    section near school grounds with which defendant driver was
    familiar, evidence *held*, to present question for consideration
    of jury as to driver's negligence where, although he saw boy
    hastening toward intersection with face turned in opposite
    direction, driver failed to sound horn or stop truck as he
    could have done within 4 or 5 feet.

3. NEGLIGENCE—STANDARD OF CARE OF EIGHT-YEAR-OLD CHILD.
    An eight-year-old child is responsible for the exercise of such
    care and vigilance as may reasonably be expected of one of
    his age, intelligence, and experience, and his failure to exer-
    cise such care is negligence.

4. SAME—EXERCISE OF JUDGMENT.
    Fact that an eight-year-old boy may not have had as mature
    judgment as an adult will not excuse him from exercising
    the judgment and discretion which he possessed or from heed-
    lessly rushing into apparent and known danger.

5. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—MINOR PEDESTRIAN.
    The rule of contributory negligence is properly applicable to
    eight-year-old boy who knew and understood the risk and
    danger of crossing a street intersection in which traffic was
    passing.

6. SAME—VIEW OF STREET CROSSING—PRESUMPTIONS.
    An eight-year-old boy who had an unobstructed view of street
    crossing he approached before running into tank truck thereat
    is presumed to have seen what was plainly visible.

---

Standard of care required of child, see 2 Restatement, Torts, § 283,
comment (e).
    Contributory negligence of children, see 2 Restatement, Torts,
§ 464 (2).

7. SAME—STREET CROSSING—DUE CARE OF MINOR—AGE—SNOW-BALLS.

An eight-year-old boy approaching a street crossing was not relieved of making proper observation before crossing merely because of age or the fact that other boys were snowballing him.

8. SAME—CONTRIBUTORY NEGLIGENCE AS MATTER OF LAW—MINOR PEDESTRIAN.

An eight-year-old boy who looked backward toward boys snowballing him as he approached street crossing and failed to make proper observation before attempting to cross although his view was unobstructed was guilty of contributory negligence as a matter of law, hence recovery of damages for his death when he fell or was thrown under wheel of negligently operated tank truck trailer was precluded.

9. SAME—WILFUL AND WANTON MISCONDUCT—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

In action against owner and driver of tank truck and trailer for death of eight-year-old boy who fell or was thrown under trailer wheel at street crossing, evidence *held,* not to present a question of fact as to wilful and wanton misconduct of driver so as to excuse contributory negligence of boy in failing to make proper observation before attempting to cross.

Appeal from Bay; McCormick (James L.), J. Submitted October 14, 1942. (Docket No. 90, Calendar No. 42,132.) Decided December 23, 1942.

Case by Rhea E. Ackerman, administratrix of the estate of Charles Ackerman, deceased, against Advance Petroleum Transport, Inc., a Michigan corporation, and another for damages arising because of death of her decedent. Verdict and judgment for plaintiff. Defendants appeal. Reversed without new trial.

*G. C. Leibrand* and *Arthur J. Kinnane,* for plaintiff.

*H. Monroe Stanton,* for defendants.

STARR, J.   This case involves plaintiff's claim for damages resulting from fatal injuries sustained by her minor son, Charles Ackerman, in an automobile accident which occurred about 4 o'clock in the afternoon of March 5, 1940, at or near the intersection of Florence and Linn streets in Bay City. Defendants having presented no testimony, the facts are uncontradicted.

Florence street runs east and west and Linn street north and south. Linn street, north of Florence, jogs about 36 feet to the east. Both streets were paved and were approximately 30 feet wide between curbs. The jog in Linn street created a somewhat confusing situation as to the location of sidewalks. The walk along the east side of Linn street south of Florence was located 13 feet east of the curb but did not extend north to Florence. Such walk ended at the sidewalk extending along the south side of Florence which was about 12 feet from the curb. There was a path extending from the north end of the Linn street walk to the Florence street curb. There was a walk, referred to as the "little sidewalk," running parallel with, and about 13 feet 10 inches east of, the Linn street walk (if extended north), which little sidewalk covered the distance of 12 feet between the walk along the south side of Florence and the south curb of Florence. There was also a crosswalk parallel with, and 31½ feet east of, the Linn street walk (if extended north), which crosswalk covered the distance of 12 feet between the walk along the south side of Florence and the south curb of Florence. Such crosswalk, because of the jog in Linn street, was in line with the sidewalk along the east side of Linn north of Florence. The day was bright, and the pavements, though practically clear of snow, were wet.

Defendant company's eight-wheel tank truck and

tank trailer, with an over-all length of about 40 feet
and equipped with air brakes, was being driven east
on Florence street by its employee, defendant Conk-
lin.   Such truck and trailer approached the Linn
street intersection at a speed of 8 to 12 miles an
hour and crossed the intersection at 8 to 10 miles an
hour.  Defendant driver was familiar with the streets
and intersection and knew of the sign, "watch for
school children," located on the south side of Flor-
ence street about 130 feet west of Linn. .

Plaintiff's decedent, a normal, healthy child of
average intelligence, slightly over eight years old,
was a pupil in the third grade in Park school.   The
school grounds were located on the east side of Linn
street about ½ block south of Florence.  He had at-
tended this school for about five weeks.  He had re-
ceived safety instruction in school and had been
cautioned by his father regarding danger at the
Florence and Linn street intersection.   His route
home from school was north on Linn and across
Florence street.   After school on the day of the ac-
cident plaintiff's decedent and other children were
throwing snowballs and playing along the east side
of Linn street.   Decedent was last seen running or
walking rapidly north on the sidewalk along the east
side of Linn near Florence.   Although going north,
he was looking backward to the south and west to-
ward other boys who were throwing snowballs at
him.  He ran into, or collided with, the right side of
defendant company's tank trailer and fell, or was
thrown, under the right rear wheel of the trailer
and was instantly killed.  The accident occurred on
Florence street at a point a few feet north of the
south curb and just east of the path leading from
the end of the sidewalk on the east side of Linn
street to the Florence street curb.  Defendant driver
approaching the street intersection from the west

and plaintiff's decedent approaching from the south both had unobstructed views of the scene of the accident.

Plaintiff, as administratrix of the estate of her deceased son, began suit against defendant company as owner, and defendant Conklin as driver, of the truck and trailer. In her declaration plaintiff alleged negligence and also "gross negligence and wilful and wanton misconduct" on the part of defendants; also that defendants' gross negligence and wilful and wanton misconduct excused any contributory negligence on the part of her decedent. She alleged further that her decedent "was of such tender age as to be incapable of negligence or contributory negligence." Defendants answered, generally denying plaintiff's claims of negligence, gross negligence, and wilful and wanton misconduct, and alleging contributory negligence on the part of plaintiff's decedent. The case was tried before a jury.

At the conclusion of the opening statement by plaintiff's counsel, defendants moved for a directed verdict on the ground that such opening statement did not set forth a cause of action. Such motion was denied. At the conclusion of plaintiff's proofs defendants moved for a directed verdict on the ground that there was no proof of their negligence and that plaintiff's decedent was guilty of contributory negligence as a matter of law. The court reserved its decision on such motion. Defendants presented no testimony.

Plaintiff then requested the trial court to submit to the jury the question of "whether or not the defendant driver was guilty of wilful and wanton misconduct." Plaintiff also requested the court to instruct the jury "that they might find the defendant driver guilty of wilful and wanton misconduct"

which would excuse contributory negligence on the part of plaintiff's decedent. The trial court ruled that the case should be submitted only on the questions of negligence and contributory negligence.

The jury returned a verdict for plaintiff of $1,500. Defendants' motion for judgment notwithstanding the verdict was denied, and they appeal.

Defendants contend that the verdict was against the great weight of the evidence; that the trial court erred in not directing a verdict for defendants and erred in denying their motion for judgment notwithstanding the verdict; also that the proofs did not establish negligence on the part of defendants, and that plaintiff's decedent was guilty of contributory negligence as a matter of law.

Plaintiff cross-appeals, alleging error by the trial court in denying her request to submit to the jury the question of whether or not defendant driver was guilty of wilful and wanton misconduct and also error in denying her request to instruct the jury that they might find defendant driver guilty of wilful and wanton misconduct which would excuse contributory negligence on the part of her decedent. Plaintiff contended further that, in the event the judgment was reversed on this appeal, a new trial should be granted because of such errors.

Defendant driver, being called by the plaintiff for cross-examination, testified that at a speed of 8 or 10 miles an hour he could stop the truck and trailer in 4 or 5 feet; that, as he approached the intersection, he saw a child on the sidewalk on the east side of Linn street about 60 feet south of the Florence street curb; that such child was running north but was looking back to the south and west. He said that the child continued to run north, and that he watched him until the front half of the truck and

trailer had passed to the east and he could no longer see the boy, because the cab cut off his view; that when he last saw the child he was still running north and was 10 or 12 feet south of the Florence street curb. Defendant driver testified further:

"*Q.* You continued in a straight direction until the boy passed out of your view?
"*A.* True.
"*Q.* Then what did you do?
"*A.* I cut my truck to the left and took to the right again in an "S" motion, to give the lad as much chance as he could possibly use.
"*Q.* The front of your vehicle was east of where the boy was when he passed out of your view?
"*A.* That is true.  *  *  *
"*Q.* And did you apply your brakes?
"*A.* I did, I pushed my brakes.  *  *  *
"*Q.*  *  *  * Now, then, you at no time sounded a horn crossing the intersection, did you?
"*A.* I don't think I did."

A witness living near the scene of the accident testified that she saw plaintiff's decedent running north on the east side of Linn street until he reached the sidewalk along the south side of Florence street, and that he was looking backward toward the south.

A 12-year-old boy, who was near the scene and who knew plaintiff's decedent, testified, in part:

"When I saw Charles Ackerman (decedent), he was by the south end of Peters' house (at the southeast corner of Florence and Linn streets). He was on the sidewalk on the east side. He was playing, throwing snowballs with the others. On the other side were four kids throwing at Charles.  *  *  * These other children were in front of the second house. Charles Ackerman was by the south side of the corner house. They were all throwing snowballs. Charles Ackerman threw a couple back.  *  *  *

"*Q.* When did you look towards the corner of Florence and Linn again?

"*A.* When someone yelled, 'Chuckie, look out.'

"*Q.* What did you do then?

"*A.* I seen the oil truck, it was between me and Charley.  *   *   *

"*Q.* What did you see when it passed?

"*A.* Charley was lying in the pavement."

Another boy, who was on duty as school safety boy at the intersection at the time of the accident, testified, in part:

"Chuckie was right by Peters' house, on the southeast corner. That would be on the east side of Linn street, and the south side of Florence street. *   *   * There were four boys behind him, throwing snowballs at him. He looked back and threw a couple, and then started to walk fast and look back. He was walking north and looking south. *   *   * When I looked again the truck was just a little ways past the corner. That would be east of the corner, and Chuckie was 10 feet east of the corner. He was in Florence street. He was lying on the pavement."

The county coroner, who examined the truck and trailer for any marks in connection with the accident, testified, in part:

"In the middle of the trailer there was a spare tire. I presume that it had hung there quite a while, as it had picked up quite an accumulation of oil and dust. This tire showed marks of some object being pulled down there, and later in checking the body, I found the hands of the little boy corresponding with the grease on the tire."

A police officer, who examined the truck and trailer soon after the accident, testified, in part:

"I found the imprint of two hands on the extra tire under the trailer. That tire was mounted hori-

zontal. There were small hand prints on it.  *   *   .*
The marks were fresh, and I saw them on the rubber
tire."

This case, like all cases involving small children,
arouses our sympathy. However, as said by Mr.
Justice Butzel in *Colvaruso's Guardian* v. *Stroh
Brewery Co.,* 301 Mich. 245, 248:

"It is our duty to judge the case by established
rules of law, although we can readily see how sym-
pathy might have affected the verdict of most jurors
if the case were submitted to them."

The first question before us is, did the testimony
present a question of fact for jury consideration as
to the negligence of defendant driver? The driver
admitted that, when approaching the intersection,
he saw the sign on the south side of Florence street,
"watch for school children," and that he knew he
was entering a school zone. He saw plaintiff's de-
cedent running north on the east side of Linn street
and continued to watch him until he was 10 or 12
feet south of the Florence street curb; that plain-
tiff's decedent, although running north, was looking
backward to the south and west. Defendant driver
said, in substance, that he swerved his truck to the
left and then back to the right in an "S" motion
"to give the lad as much chance as he could possibly
use." It is plain that the driver swerved his truck
to the left because he recognized the imminent dan-
ger of an accident. However, he neglected to sound
his horn to attract the boy's attention and to warn
him of the danger. The driver testified, "I claim I
reached for the horn, I don't remember if I reached
it or not as I turned to the left." This statement
shows that he realized the danger but failed to give
warning. He could have stopped his truck in 4 or 5
feet but failed to do so.

We are convinced that the testimony presented a question of fact for jury consideration as to the negligence of defendant driver. Under the testimony the question of the driver's negligence was a matter upon which the minds of ordinarily prudent men might reasonably differ. In *Kelley* v. *Keller*, 211 Mich. 404, 409 (20 N. C. C. A. 228), we said:

"A very easy and simple way of doing so would have been to attract the boy's attention by sounding his horn, but he did not do this. He says he attracted the attention of the traffic officer with it. If the horn were working well enough to attract his attention, no reason appears why it would not have attracted the attention of the boy had it been sounded. Again, the driver testified that he could stop the truck in five feet at the rate he was traveling. If this were true, it becomes a serious question as to whether he ought not to have stopped before he reached the boy. One witness gave it as his judgment that if the driver had kept on the circle which he was making instead of turning to the right just before he reached the curb, he would have avoided the boy. We think there was ample testimony from which the jury could infer that the driver did not use ordinary care to discover the peril of the boy nor to avoid the collision after he became aware of it."

Having concluded that there was a question of fact for jury determination as to the negligence of defendant driver, the next question is whether or not plaintiff's decedent was guilty of contributory negligence as a matter of law.

Plaintiff's decedent was a normal, healthy boy, slightly over eight years old, and one of his teachers testified that he "was a bright boy," "who was able to concentrate under almost any conditions, no matter what the surroundings were. * * * He had a capacity for intense concentration. He was very enthusiastic."

The law is well settled in this State that a child of the age of plaintiff's decedent is responsible for the exercise of such care and vigilance as may reasonably be expected of one of his age, intelligence, and experience, and that failure to exercise such degree of care is negligence. The fact that plaintiff's decedent may not have had as mature judgment as an adult will not excuse him from exercising the judgment and discretion which he possessed or from heedlessly rushing into apparent and known danger. If he knew and understood the risk and danger of crossing a street intersection in which traffic was passing, then the rule of contributory negligence is properly applicable. He was chargeable with that degree of care reasonably proportionate to his age and capacity. *Mollica* v. *Railroad Co.,* 170 Mich. 96 (L. R. A. 1917 F, 118).

Plaintiff's decedent had received safety instruction at school and had been cautioned by his father as to the danger in crossing Florence street at the Linn intersection. As he went north on Linn street on his way home, he had an unobstructed view of the Florence street crossing, and he is presumed to have seen what was plainly visible. We are satisfied that he had the capacity to understand the danger entailed in crossing Florence street, and that he also had the capacity and ability to use care and caution to guard against the dangers of such crossing.

In *Thornton* v. *Ionia Free Fair Ass'n,* 229 Mich. 1, 9, we said:

"The general rule imputes that lack of capacity up to the age of seven years, and some courts have applied it as a *prima facie* presumption until the age of 14 is reached, putting the burden of proof on those claiming contributory negligence. But age alone is not the conclusive test. Experience and capacity are also to be considered. As was said in

*Trudell* v. *Railway Co.,* 126 Mich. 73 (53 L. R. A. 271), where the injured child was 7 years and 4 months old, 'Age is not the true test in such cases. It is the intelligence of the boy, not his age, that must control.' By the tests of capacity and experience children younger than 7 years have been held guilty of contributory negligence as a matter of law.''

In *Clemens* v. *City of Sault Ste. Marie,* 289 Mich. 254, we said:

''When contributory negligence is sought to be attributed to a child, the child can only be held to that degree of care which may reasonably be expected from one under the same conditions, of the same age, sex, intelligence, and judgment. *Baker* v. *Railroad Co.,* 68 Mich. 90. But age is not the true test in such cases. It is the intelligence of the boy, not his age, that must control. *Trudell* v. *Railway Co.,* 126 Mich. 73 (53 L. R. A. 271). * * * Everyone is bound to use that degree of care which a reasonably prudent person of like age, intelligence, and experience should ordinarily use under like circumstances.''

See, also, 5 Thompson, Commentaries on the Law of Negligence (2d Ed.), chap. 151, art. 8, §§ 6309-6313.

Plaintiff's decedent was not relieved of the duty of making proper observation before crossing Florence street merely by reason of his age or the fact that other boys were snowballing him. *Chadwick* v. *Kempf,* 300 Mich. 402; *Apps* v. *Walters,* 216 Mich. 17. The testimony and the physical facts and circumstances of the accident conclusively established contributory negligence on the part of plaintiff's decedent. There was no question of fact for submission to the jury.

The evidence did not present a question of fact as

to the wilful and wanton misconduct of defendant driver. There was no evidence showing such misconduct or from which it could be inferred.

The judgment is reversed without a new trial. Defendants shall recover costs.

CHANDLER, C. J., and BOYLES, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.